**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SONIX TECHNOLOGY CO., LTD., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) Case No. 13 C 2082 |
| v. | ) |
| | ) |
| PUBLICATIONS INTERNATIONAL, | ) |
| LTD., et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, United States District Judge

On December 8, 2015, the Court granted summary judgment in favor of Defendants Publications International, Ltd. ("PIL"), SD-X Interactive, Inc. ("SD-X"), Encyclopaedia Britannica, Inc. ("Britannica"), and Herff Jones, Inc. ("Herff Jones") (collectively, "Defendants") against Plaintiff Sonix Technology Co. ("Sonix") on the basis that the patent-in-suit was invalid for indefiniteness. Before the Court is Defendants' motion to declare this case exceptional for purposes of awarding attorneys' fees. *See* 35 U.S.C. § 285. For the following reasons, the Court, in its discretion, denies Defendants' motion. *See Oplus Techs., Ltd. v. Vizio, Inc.,* 782 F.3d 1371, 1374 (Fed. Cir. 2015) ("We review all aspects of a district court's determination under 35 U.S.C. § 285 for abuse of discretion.").

**BACKGROUND**

On March 8, 2013, PIL and SD-X filed a lawsuit seeking declaratory judgment of non-infringement and invalidity of United States Patent No. 7,328,845 ("the '845 patent"), against Sonix, the owner of the '845 patent. (*See* 13 C 1847, R. 1, Compl. ¶¶ 1-11.) On March 18,

2013, Sonix, a Taiwanese company that designs and develops integrated circuits and related products, filed the present lawsuit involving the same occurrence. Rather than pursue service of a Taiwanese defendant, PIL and SD-X moved to voluntarily dismiss their action, which the district court granted on May 9, 2013. PIL and SD-X filed an answer in the present lawsuit on April 25, 2013. On September 17, 2013, Sonix filed a First Amended Complaint adding Herff Jones and Britannica as named Defendants. On October 11, 2013, Defendants answered Sonix's First Amended Complaint.

The '845 patent, entitled "Method for Producing Indicators and Processing Apparatus and System Utilizing the Indicators," issued on February 12, 2008 and is directed to the use of graphical indicators affixed to the surface of an object and negligible to the human eye that provide information, beyond the visual text and images on the object's surface, that is retrievable through an electronic system. The '845 patent describes a method for producing visually negligible dot patterns – referred to as "graphical indicators" – affixed to a surface (e.g., the page of a book), that overlap and co-exist, but do not interfere, with the main information on the surface of the object (e.g., visual text and images). By the time Sonix filed this lawsuit in March 2013, the '845 patent had undergone two ex parte reexaminations before the United States Patent and Trademark Office ("PTO") – both resulting in the issuance of Ex Parte Reexamination Certificates on December 27, 2011 and December 26, 2012.[1] The '845 patent was also subject to litigation that the parties in that lawsuit settled and voluntarily dismissed in June 2011. *See Sonix Tech. Co., Ltd. v. VTech Elecs. N. Am., LLC*, 10 C 8291 (N.D. Ill. June 25, 2011).

---

[1] The Court's claim construction ruling contains a detailed discussion of the PTO's ex parte reexaminations and the prosecution history of the '845 patent. (*See* R. 123, 10/30/14 Mem. Op. & Order, at 5-15.)

Relevant to Defendants' arguments in the present motion, in November 2013, Defendants disclosed to Sonix that they were marketing dot pattern technology products pursuant to a license from GeneralPlus Technology, Inc., a Taiwanese-based corporation. During fact discovery in February 2014, when asked to identify the persons most knowledgeable about how the accused products operated, Defendants advised Sonix that "the persons most knowledgeable to the topics identified in this Interrogatory are employed by GeneralPlus." Again, in October 2014, Defendants informed Sonix that GeneralPlus possessed the information regarding the functionality of the technology at issue. Shortly before the fact discovery deadline, Defendants disclosed that they expected to elicit testimony from GeneralPlus employees to support their defenses because such employees had knowledge concerning the function and operation of PIL and SD-X electronic products. Despite these disclosures, Sonix did not seek discovery from GeneralPlus, including "any non-public information about the operation of GeneralPlus' products with a dotbased system."

Following the close of fact and expert discovery, Defendants filed a motion for summary judgment arguing that the '845 patent was invalid and non-infringed. The Court granted Defendants' summary judgment motion on the ground that the '845 patent was invalid for indefiniteness. Because the Court concluded that the '845 patent was invalid as indefinite, it did not address Defendants' argument based on non-infringement of the patent. The Court presumes familiarity with its prior rulings in this matter, including the December 8, 2015 summary judgment order, the August 10, 2015 ruling granting in part Defendants' motion for leave to amend their final non-infringement and invalidity contentions, and the October 30, 2014 claim construction ruling.

**LEGAL STANDARD**

Under 35 U.S.C. § 285, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."[2] A case is "exceptional" if it "stands out from others with respect to the substantive strength of a party's litigation position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014); *see also Gaymar Indus., Inc. v. Cincinnati Sub-Zero Prods., Inc.,* 790 F.3d 1369, 1372 (Fed. Cir. 2015). "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Octane Fitness,* 134 S. Ct. at 1756. Prior to the Supreme Court's 2014 decision in *Octane Fitness*, the Federal Circuit's "rigid" standard for exceptional cases limited the award of fees under § 285 to situations involving litigation-related conduct that was sanctionable or where the litigation was brought in bad faith and was objectively baseless. *See id.* at 1754 (abrogating *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.,* 393 F.3d 1378, 1381 (Fed. Cir. 2005)). Also, the *Octane Fitness* Court rejected "the Federal Circuit's requirement that patent litigants establish their entitlement to fees under § 285 by 'clear and convincing evidence,'" requiring the lesser evidentiary standard of preponderance of the evidence. *Id.* at 1758.

**ANALYSIS**

**I.   Sonix's Pre-Filing Conduct**

In support of their § 285 motion, Defendants first argue that Sonix did not engage in a

---

[2] The parties do not dispute that Defendants are prevailing parties for purposes of 35 U.S.C. § 285. *See SSL Servs., LLC v. Citrix Sys., Inc.,* 769 F.3d 1073, 1086 (Fed. Cir. 2014).

4

reasonable and meaningful investigation before filing suit and did not have an adequate basis for its claims. *See Source Vagabond Sys. Ltd. v. Hydrapak, Inc.*, 753 F.3d 1291, 1298 (Fed. Cir. 2014); *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1300 (Fed. Cir. 2004); *see also* Fed.R.Civ.P. 11. In response, Sonix's patent counsel avers that he performed a pre-filing investigation into the VTech lawsuit, briefly discussed above. *See Sonix Tech. Co., Ltd. v. VTech Elecs. N. Am., LLC*, 10 C 8291 (N.D. Ill.) (R. 230, Hangartner Decl. ¶ 7.) Counsel explained that GeneralPlus supplied dot pattern technology used in VTech's products, and that based on his review of those products, including the optical pen and the dot patterns, observation of various functions, and comparison with the requirements of the claims of the '845 patent, he determined that Sonix had a good-faith basis to assert an infringement claim against VTech. (*Id.*) As discussed, the parties settled the VTech lawsuit in June 2011. (*Id.* ¶ 24.)

In addition, after the first ex parte reexamination before the PTO that resulted in the issuance of an Ex Parte Reexamination Certificate, counsel avers that he investigated two of PIL's interactive book products similar to Sonix's educational books and related products, namely, (1) My Interactive Point-and-Play 5-Book Library, and (2) Ready to Read Complete System. (*Id.* ¶ 25.) According to Sonix's counsel, each product included an optical pen and books with text and images, as well as dot patterns printed on their pages. (*Id.*) Counsel, who has a degree in engineering physics, stated that he examined the optical pens by disassembling them to examine the circuit boards and internal components. (*Id.*) Based on his investigation and applying reasonable claim constructions, counsel determined that PIL's products using the dot pattern technology satisfied all of the claim elements of the relevant claims. (*Id.* ¶¶ 26, 28.) After the PTO issued the second Ex Parte Reexamination Certificate and Sonix engaged in

5

limited discussions with PIL and SD-X, Defendants initiated the lawsuit against Sonix on March 8, 2013 in case number 13 C 1847.  (*Id*. ¶ 32.)  Thereafter, Defendants voluntarily dismissed their lawsuit and filed an answer in this case.

Based on the presumption of validity of the '845 patent under 35 U.S.C. § 282, along with the PTO's reexaminations decided in Sonix's favor, and counsel's averments regarding his investigation in into the accused products, Defendants have not established – by a preponderance of the evidence – that Sonix failed to engage in a reasonable and meaningful investigation before filing this lawsuit or that Sonix did not have an adequate basis to bring its claims.  *See Octane Fitness,* 134 S. Ct. at 1758.  In particular, Sonix has presented evidence that counsel investigated the accused products in the context of the earlier VTech lawsuit involving GeneralPlus's technology, as well as specifically investigating the accused products in this lawsuit.  Counsel interpreted the asserted patents claims and compared the accused products, including disassembling the optical pens.  Under the Federal Circuit's teachings, counsel's efforts fulfilled Rule 11's pre-filing requirements.  *See Q-Pharma,* 360 F.3d at 1300-01.  Based on the record before the Court, Sonix conducted a sufficient pre-filing investigation.

Nevertheless, Defendants assert that Sonix "asserted infringement without any specific evidence of the internal software functionality of Defendants' products."  In essence, Defendants are arguing that Sonix cannot prove infringement without source code from the accused products, yet the Court's summary judgment ruling did not address the parties' infringement arguments nor will the Court make any such determinations here.  As such, the Court, in its discretion, rejects Defendants' argument that Sonix's pre-filing conduct makes this case "exceptional" pursuant to § 285 and *Octane Fitness*.

## II.     Prosecution and Expansion of Litigation

Similarly, Defendants question Sonix's litigation strategies arguing that "Sonix engaged in bad-faith litigation by refusing to prosecute its case" and "expanded the scope of the litigation without a legal or factual basis." Defendants first explain that "after filing its complaint, Sonix sought discovery from Defendants in an attempt to fill the evidentiary gap in its pre-filing investigation, seeking documents that describe the 'operation' of [the] accused products." Defendants highlight Sonix's motion to compel "documents to show how the Defendants' electronic reader pens actually capture the printed codes on the pages of books and how those codes are processed for their intended audio output mechanism." In doing so, Defendants argue that in filing its motion to compel documents establishing how Defendants' electronic books and readers operated, Sonix essentially admitted it needed information on the operation of the devices, including software functionality, to prove its case. Defendants' argument is misplaced, especially under the liberal federal discovery standards that governed Sonix's discovery requests in 2013. *See Bond v. Utreras,* 585 F.3d 1061, 1075 (7th Cir. 2009) ("[l]iberal discovery is provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes.") (citation omitted). As discussed, Sonix had investigated its infringement claims prior to filing this lawsuit and Defendants' argument that it was inappropriate for Sonix to engage in discovery to further support its claims, narrow the issues, or establish a basis for summary judgment is contrary to standard litigation practice and the federal discovery rules.

Next, Defendants take issue with the fact that Sonix did not obtain direct discovery from GeneralPlus regarding source code. In its response, Sonix maintains that it decided to forego expensive, and perhaps futile, discovery from GeneralPlus, and that it pursued any such

discovery from Defendants and domestic third-parties. (R. 231, 1/11/16, Pang Decl. ¶¶ 29-30.) Although the Court criticized Sonix for its failure to more fully explore information from GeneralPlus, at the same time, the Court also acknowledged that Defendants could have been more compliant with procedural rules. (R. 169, 8/10/15 Minute Entry.) Under these particular circumstances, Sonix's litigation strategy is not "exceptional" for purposes of § 285, as Defendants argue. *See Octane Fitness,* 134 S.Ct. at 1756; *see*, *e.g., Lumen View Tech. LLC v. Findthebest.com, Inc.,* 811 F.3d 479, 482 (Fed. Cir. 2016) (predatory strategy in baseless litigation made case "exceptional" under 35 U.S.C. § 285).

In further support of their argument that attorney's fees are warranted in this matter, Defendants contend that Sonix improperly and unreasonably expanded this litigation by adding Defendants Herff Jones and Britannica in their First Amendment Complaint on September 17, 2013. The parties did not object to Sonix amending its allegations to add these Defendants to the lawsuit until the present motion. In any event, in response, Sonix explains that after PIL and SD-X filed their declaratory judgment lawsuit and the parties agreed to litigate their claims in the present lawsuit, Sonix gained additional information regarding PIL's and SD-X's relationship with Herff Jones and Britannica, namely, that these Defendants were PIL's and SD-X's customers. Sonix also maintains that it added Herff Jones and Britannica as named Defendants to this action because it was seeking injunctive relief to prevent Herff Jones and Britannica from practicing the patented invention and there was a possibility that Sonix could not recover full monetary relief without naming them as Defendants due to Sonix's concerns about its ability to prove direct infringement. (Pang Decl. ¶¶ 26-27.) Under the circumstances, Defendants' argument that Sonix's addition of Defendants Herff Jones and Britannica is unreasonable under

8

*Octane Fitness* is misplaced, especially because Defendants were aware that Sonix would add these customers/retailers as named Defendants as early as July 2013, but did not object to the addition of these Defendants to the lawsuit until two and a half years later when they filed this § 285 motion. (R. 41, 7/26/13 Joint Status Stmt.)

Moreover, despite the fact that Defendants never filed a motion to clarify Sonix's infringement contentions, Defendants now argue that Sonix's conduct "stands out" for § 285 purposes because Sonix failed to provide clear infringement and validity contentions in its efforts either to expand this litigation or fail to prosecute it. Without any substantiation or a developed argument, Defendants contend that "Sonix's infringement contentions offered the same factless and conclusory statements of infringement as to all asserted claims." Defendants' perfunctory and undeveloped arguments do little to support their assertion that Sonix's conduct "stands out" from the general practices in patent litigation in relation to the strength of Sonix's case, especially because it is well-settled in both the Seventh and Federal Circuits that undeveloped and unsubstantiated arguments are waived. *See Packer v. Trustees of Ind. Univ. Sch. of Med.,* 800 F.3d 843, 852 (7th Cir. 2015); *Fresenius USA, Inc. v. Baxter Int'l, Inc.,* 582 F.3d 1288, 1296 (Fed. Cir. 2009). Thus, the Court, in its discretion, denies this aspect of Defendants' motion.

### III.  Local Patent Rule Violations

Last, Defendants argue that Sonix refused to provide its positions during fact discovery in violation of the Northern District of Illinois' Local Patent Rules. The Court discussed the parties' infringement contentions and other discovery issues in detail in its August 10, 2015, Memorandum Opinion and Order granting in part Defendants' motion for leave to amend their

final non-infringement and invalidity contentions. (R. 170, 8/10/15 Mem. Op & Order, at 3-4.) In the present motion, Defendants rehash many of the same arguments they made in support of their motion for leave to amend.

That being said, Defendants contend that Sonix violated the Local Patent Rules because, as part of its litigation strategy, Sonix deliberately refused to provide specifics regarding its litigation positions. In particular, Defendants argue that Sonix "refused" to supplement its initial responses to Defendants' initial invalidity contentions in October 2014. Turning to the correspondence Defendants rely upon for this assertion, Sonix's counsel explained that Defendants' request to "immediately supplement" the initial responses was not reasonable in light of the fact that the Court had just held the *Markman* hearing on September 11, 2014, thus the claim construction ruling was imminent, and that the Defendants' request was inconsistent with the Court's scheduling order. (R. 153-10, 10/9/14, Fallon Letter, at 1.) Sonix's conduct – in this context – is hardly unreasonable as Defendants maintain. Defendants also take issue with Sonix's March 2015 response to Defendants' second set of interrogatories regarding Sonix's explanation for a contention. Defendants, however, did not file a motion to compel in relation to this interrogatory, and the Court would be hard-pressed to conclude that this conduct amounts to "obfuscation" as Defendants argue.[3]

In further support of their argument regarding the Local Patent Rules, Defendants assert that Sonix's final contentions were essentially the same as their initial contentions. Again, Defendants fail to develop this argument in the present motion, and it is not the Court's role to

---

[3] Defendants also point to Sonix's liability expert's July 2015 deposition to underscore Sonix's unreasonable conduct in this matter. The Court considered this argument – in Defendants' favor – when granting Defendants' motion for leave to amend its final contentions.

scour the record and piece together their argument for them.  *See D.Z. v. Buell*, 796 F.3d 749, 756 (7th Cir. 2015).

As *Octane Fitness* instructs, district courts must determine whether a case is exceptional by considering the totality of the circumstances.  After presiding over this lawsuit since March 2013, and considering the totality of the particular circumstances of this case, Defendants have not set forth a basis for the Court to conclude that this hard-fought lawsuit "stands out" with respect to the strength of Sonix's litigation position or that Sonix's conduct was unreasonable under the parameters set forth in *Octane Fitness*.  In other words, Sonix's ligation position "was not so merit-less as to 'stand out' from the norm." *SFA Sys. LLC, v. Newegg, Inc.,* 793 F.3d 1344, 1348 (Fed. Cir. 2014) (citing *Octane Fitness,* 134 S.Ct. at 1756).  Because this case is not exceptional, the Court, in its discretion, declines to award of attorneys' fees under § 285.

## CONCLUSION

For these reasons, the Court, in its discretion, denies Defendants' motion for attorneys' fees brought pursuant to 35 U.S.C. § 285.

**Dated:** April 19, 2016

**ENTERED**

_____
**AMY J. STUEVE**
**United States District Court Judge**